**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| ISIDRO MARTINEZ | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 06-CV-454-SAJ |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security | ) |
| Administration,[1/] | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**[2/]

Pursuant to 42 U.S.C. § 405(g), Plaintiff Isidro Martinez (Plaintiff) appeals the decision of the Commissioner denying him Social Security benefits. Plaintiff asserts that (1) the Appeals Council erred in failing to properly consider and weigh the treating physician's opinion under the regulation; (2) the ALJ failed to properly assess Plaintiff's residual functional capacity; (3) the ALJ failed to properly evaluate Plaintiff's credibility; and (4) the ALJ erred in finding Plaintiff could perform other work. For the reasons discussed below, the Court reverses and remands the decision of the Commissioner.

**1. FACTUAL AND PROCEDURAL HISTORY**

Plaintiff was born on December 23, 1955, and was 48 years old on February 27, 2004, the date he alleges his disability began. He obtained a general equivalency diploma and attended two years of college. (R. 517.) His previous work experience included employment as a back hoe operator, construction laborer, alignment technician, diesel

---

[1/] Effective February 1, 2007, pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue, Acting Commissioner of Social Security, is substituted for Jo Anne B. Barnhart as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 42 U.S.C. § 405(g) of the Social Security Act.

[2/] This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

mechanic, and apartment maintenance person. (R. 65, 73.) He initially claimed that his ability to work was limited by pain in his chest, shoulder, stomach, and gastrointestinal bleeding. (R. 64.)

Plaintiff was injured on the job in June 2000. (*See* R. 111-28.) In December of that year, he had surgery for a torn right shoulder rotator cuff. (R. 129-36.) A day afer the surgery, he experienced numbness and weakness in his left hand and arm. Testing performed a month later revealed moderate ulnar neuropathy in his left elbow. (R. 137-38.) A functional capacity evaluation in July of 2001 indicated that he could return to work as a mechanic as long as he performed no overhead reaching. (R. 140-41.) In August 2001, he had a surgical release of an entrapped nerve in his left elbow. (R. 153-63.) Subsequent pain and "triggering"[3] in his right little finger led to a surgical release of that finger in December 2001. (R. 164-69.)

A January 2002 functional capacity evaluation showed that his bilateral shoulder range of motion, hand grip strength and finger motion were all reduced. (R. 170-75.) Later in 2002, Plaintiff began experiencing right shoulder pain again. (R. 370.) Testing in 2003 revealed another tear in his right rotator cuff tendons (*E.g.,* R. 352, 368), and he had another surgery in June 2004 to repair that tear. (R. 349-50.) In September 2004, he reported recurrence of trigger finger symptoms in his right middle and ring fingers. (R. 328-29, 332.) Plaintiff stated that his middle finger would sometimes become "stuck" and require manual extension. (R. 238.) He described the pain in these fingers as "sharp and

---

[3] "Trigger finger" or digital tendinitis and tenosynovitis develops "when a tendon cannot glide within its sheath because of a thickening or nodule that catches at the site of the tightened first annular pulley, preventing smooth extension of flexion of the finger" which "may lock, or 'trigger,' suddenly extending with a snap." *The Merck Manual* 496 (17th Ed. 1999).

stabbing" and reported tenderness and muscle spasm in his right forearm. His physical therapist noted "palpable stenosis to the index, middle and ring finger tendons" which affected his grip and ability to write. Treatment with splints and exercise did not improve this condition. (R. 239.) In October 2004, x-rays of Plaintiff's left shoulder suggested "long standing wear" to that joint. (R. 225.) A June 2005 evaluation notes Plaintiff's complaints of pain radiating into his upper left arm, with occasional symptoms of numbness and tingling. (R. 468.)

Plaintiff filed his application for a period of disability, disability insurance benefits and supplemental security income on March 26, 2004. (R. 51-54, 496-98.) After he was denied benefits at the initial and reconsideration determination levels, he filed a timely Request for Hearing. Administrative Law Judge (ALJ) Richard A. Say held the hearing on January 11, 2006 (*see* R. 513-42) and issued an unfavorable decision on April 12, 2006. (R. 19-25.) Plaintiff filed a request for Review with the Appeals Council, and the Appeals Council denied Plaintiff's request on July 7, 2006. (R. 7-8.) Plaintiff now seeks judicial review.

## 2. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo*. *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993). The Court will "neither reweigh the evidence nor substitute its judgment for that of the Commissioner." *Qualls v. Apfel*, 206

F.3d 1368, 1371 (10th Cir. 2000); *see Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational. *Williams*, 844 F.2d at 750.

"The finding of the Secretary[4] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750. In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance. *Perales*, 402 U.S. at 401. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Williams*, 844 F.2d at 750. This Court must also determine whether the Commissioner applied the correct legal standards. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards. *Glass*, 43 F.3d at 1395.

## 3.  ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ found that Plaintiff had the following severe impairments: status post rotator cuff tear and repair of the right shoulder, left ulnar nerve repair, and chest pains of unknown etiology upon exertion. (R. 21.) However, Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (R. 22.) Further, the ALJ determined that Plaintiff

---

[4]  Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103-296. For the purpose of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner."

had the residual functional capacity to perform a wide range of light level exertional tasks. The ALJ specifically found that plaintiff was able to lift and carry up to 10 pounds frequently and 20 pounds occasionally and he could sit, stand or walk up to six hours in an eight-hour workday although he must avoid tasks involving overhead reaching. (*Id.*) Considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ opined that jobs exist in significant numbers in the national economy that the claimant can perform. (R. 23.) Accordingly, the ALJ concluded that Plaintiff had not been under a "disability," as defined in the Social Security Act, from February 27, 2004, through the date of his decision, April 12, 2006. (R. 24.)

## 4. REVIEW

### A. The Appeals Council's Decision

Approximately one month after the ALJ's decision, Plaintiff's presented to his treating physician, Dr. Louis Elfrink, for another residual functional capacity evaluation. In the section requesting information about the Plaintiff's "diagnosis/disabilities which have lasted, or are expected to last, for at least twelve months, Dr. Elfrink wrote that Plaintiff had severe bilateral shoulder arthritis with impingement syndrome as well as numerous other problems. (R. 511.) He identified the pain associated with Plaintiff's shoulders as "very intense", and relieved only by pain medications that moderately affected Plaintiff's concentration and mood. (*Id.*) He opined that Plaintiff could lift only five pounds frequently and less than ten pounds occasionally, explaining that Plaintiff could not "abduct bilaterally greater than 70 [degrees] elevation" and "[r]epetitive activities aggravate shoulders." (*Id.*) Dr. Elfrink indicated that Plaintiff could stand and walk up to 30 minutes at time, but Plaintiff could

stand only one to two hours maximum in a work day. (R. 512.)  He reported that Plaintiff could never reach overhead, and could reach out only occasionally. (*Id.*)  Dr. Elfrink further noted that Plaintiff could not use his hands and arms raised in and out due to Plaintiff's shoulder problems, and that Plaintiff's ability to operate machinery and heavy equipment "depends on how frequently [he] will need to use shoulders." (*Id.*)  Dr. Elfrink also commented that Plaintiff was "on potent analgesic" medications that would affect his ability to work. (*Id.*)

Plaintiff' s hearing attorney submitted Dr. Elfrink's evaluation to the Appeals Council, but the Appeals Council determined that it did "not affect the decision about whether you were disabled beginning on or before April 12, 2006" (the date of the ALJ's decision) because "[t]his new information is about a later time." (R. 8.)  Plaintiff argues that the Appeals Council erred by refusing to address Dr. Elfrink's evaluation.  The Court agrees.

Social Security regulations require the Appeals Council to consider evidence submitted to it if it is "new and material" and "relates to the period on or before the date of the [ALJ's] hearing decision."  20 C.F.R. §§ 404.970(b), 416.1470(b); *see Chambers v. Barnhart*, 389 F.3d 1139, 1143 (10th Cir. 2004); *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004); *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003). "New" evidence is that which is "not duplicative or cumulative."  *Threet*, 353 F.3d at 1191 (citation omitted). Dr. Elfrink's assessment was "not available to the ALJ at the time he made his decision, and is thus neither duplicative nor cumulative."  *Id.*  Dr. Elfrink's assessment also qualifies as "material" under the Tenth Circuit's definition since "there is a reasonable possibility that [it] would have changed the outcome."  *Id.*  The limitations imposed by Dr. Elfrink, if accepted by the ALJ, would have changed the ALJ's RFC assessment and, according to

6

the vocational expert at Plaintiff's hearing, the limitations imposed by Dr. Elfrink would have reduced or even eliminated the number of jobs existing in significant numbers in the national economy that Plaintiff could perform.

Finally, Dr. Elfrink's evaluation clearly relates to the period before the date of the ALJ's decision.  As Plaintiff points out, Dr. Elfrink's treatment notes are replete with references to Plaintiff's bilateral shoulder pain before and after December 2004, when Dr. Nebergall released Plaintiff to work with a permanent 20 pound lifting restriction.  (*See* R. 495.)  In April 2004, Dr. Elfrink observed, in connection with Plaintiff's complaints of chest pain, that Plaintiff had a limited range of motion in both shoulders. (R. 229-30.)  In October 2004, Dr. Elfrink noted that x-rays of Plaintiff's left shoulder showed "long-standing wear to the shoulder joint." (R. 225.)  In March 2005, Dr. Elfrink noted that Plaintiff's bilateral shoulder pain interfered with his sleep and daily functioning.  (R. 474-77.)  In May 2005, Dr. Elfrink found that plaintiff was experiencing significant pain with limited abduction of his left shoulder.  He described Plaintiff's left shoulder as "markedly tender" and diagnosed him with "chronic" and "severe" left shoulder impingement syndrome. (R. 472.)  He noted: "Today [Plaintiff] was tearful and mentioned the pain is making him question his desire to continue to live if this is the way it has to be." (R. 471.)

In June 2005, Dr. Elfrink referred Plaintiff to a colleague for a second opinion; in that examination, Lamont Cavanaugh, M.D., noted that Plaintiff had bicep groove and shoulder joint pain, subacromial space and paravertebral tenderness, with positive test results for impingement sign and Hawkins test. (R. 468-69.)  In July 2005, Dr. Elfrink found that positive atrophy of Plaintiff's left and right arm muscles and deformity of Plaintiff's right shoulder joint, with bilateral limited range of motion and reduced strength in abduction and

forward flexion. (R. 464-66.) Dr. Elfrink diagnosed Plaintiff with bilateral shoulder arthritis, noting that prescribed physical therapy exercises had worsened Plaintiff's shoulder pain, and various medications and injections had not helped significantly. (R. 466.) In October 2005, Dr. Elfrink noted that Plaintiff had "[c]hronic, daily, persistent" shoulder pain and took several prescription pain medications in an effort to address the problem. (R. 459-60.) He also had increased blood pressure which "coincides with exacerbation of shoulder pains at the time." (R. 460.)

Dr. Elfrink's treatment notes contain his diagnosis of Plaintiff's shoulder conditions, and, according to Dr. Elfrink's May 2006 assessment, those shoulder conditions severely limited Plaintiff's ability to work.

The Commissioner argues that the Plaintiff cannot challenge the Appeals Council's decision about the new evidence because the Council did consider it, but discounted it because it described Plaintiff's health after the ALJ issued his decision. Further, the Commissioner argues that, when the Appeals Council denied a request for review, the ALJ's decisions stands as the Commissioner's final decision. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000); *Reid v. Chater*, 71 F.3d 372, 373 (10th Cir. 1995). Hence, the Commissioner argues, Plaintiff's argument is unreviewable by the Court.

The Commissioner's argument is specious. The Tenth Circuit has explained:

> Whether [evidence] qualifies as new, material and chronologically relevant is a question of law subject to our de novo review. . . . If the evidence does not qualify, it plays no further role in judicial review of the Commissioner's decision. If the evidence does qualify and the Appeals Council considered it in connection with the claimant's request for administrative review (regardless of whether review was ultimately denied), it becomes part of the record we assess in evaluating the Commissioner's denial of benefits under the substantial-evidence standard. Finally, if the evidence qualifies but the

>Appeals Council did not consider it, the case should be remanded for further proceedings.

*Chambers*, 389 F.3d at 1142 (internal quotation and citations omitted). The Appeals Council erred in failure to properly consider Dr. Elfrink's assessment. Such error compels remand by the Court. Further, numerous errors by the ALJ compel remand, as discussed below.

### B.    Residual Functional Capacity

#### 1.    Treating Surgeon's Limitation

The ALJ found that Plaintiff could perform a "wide range of light level" work with restriction on tasks involving overhead reaching. (R. 22). To support that finding, the ALJ dismissed Plaintiff's alleged inability to lift more than 5 pounds; instead, the ALJ gave controlling weight to Plaintiff's treating surgeon, Dr. Robert W. Nebergall, D.O., who released Plaintiff to return to work on December 30, 2004, with a lifting restriction of 20 pounds. (R. 23; *see* R. 495.) The ALJ made no mention of the subsequent medical opinions of Dr. Elfrink and others in 2005 or 2006.

"The ALJ is required to give controlling weight to the opinion of a treating physician as long as the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)); *see Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004); *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003). The Tenth Circuit has emphasized that "[u]nder the regulations, the agency rulings, and our case law, an ALJ must give good reasons ... for the weight

assigned to a treating physician's opinion," that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." *Watkins*, 350 F.3d at 1300 (quotations omitted).

The only reason given by the ALJ in this case for assigning controlling weight to Dr. Nebergall's assessment was that the "assessment of the claimant's ability to work is consistent with the medical history and the objective medical evidence of record." (R. 23.) As Plaintiff points out, this conclusory statement is not consistent with Dr. Elfrink's opinion. Further, it appears inconsistent with Dr. Nebergall's own observations of the finger triggering and hand pain that Plaintiff developed after surgery to Plaintiff's right shoulder (*see* R. 328-29, 332-23, 335) as well as the physical therapists' notes written pursuant to therapy prescribed by Dr. Nebergall (*see* R. 238-39, 242-47, 251-55).

### 2. **Combined Impairments**

Plaintiff also faults the ALJ for failing to include all the limitations on Plaintiff's ability to reach in the ALJ's RFC assessment or the ALJ's questions to the vocational expert. The ALJ found that Plaintiff had the ability to perform a wide range of light level exertional tasks that did not involve overhead reaching. (*See* R. 22.) The ALJ did not include limitations on any other kind of reaching or activities such as grasping, handling, or manipulating. However, the ALJ had found, at step two, that Plaintiff had severe impairments of "left ulnar repair, and chest pains of unknown etiology upon exertion." in addition to the problems with Plaintiff's shoulders. Social Security Ruling 85-15 states that reaching, along with handling, " are activities required in almost all jobs" and significant limitations in reaching "may eliminate a large number of occupations." 1985 WL 56857 at *7; *see Saiz v. Barnhart*, 392 F.3d 397, 400 (10th Cir. 2004).

As set forth above, Dr. Nebergall's records, and the records of the physical therapists to whom Dr. Nebergall sent Plaintiff, indicate that Plaintiff re-developed trigger finger symptoms in three of his right hand fingers after his second right shoulder surgery. (R. 328-29, 332.)  Plaintiff reported to a therapist that his middle finger became "stuck" and required manual extension, and the pain in his finger joints as "sharp and stabbing."  (R. 238-39.)  He also reported tenderness and muscle spasm in his right forearm. (R. 244.) His physical therapist noted "palpable stenosis of th index, middle and ringer finger tendons" which affected his grip and ability to write.  Treatment with splints and exercise did not improve this condition.  (R. 239.)  Plaintiff testified that he could pick up a cup of coffee to drink, but couldn't hold it long because he didn't haven any strength in his fingers. (R. 528-29.)  The State agency medical consultant's found Plaintiff to be "limited" in his ability to reach in all directions (including overhead), handle, and perform fine manipulation. (R. 445.)

When the ALJ presented his RFC assessment of Plaintiff in a hypothetical question to the vocational expert, she named four unskilled jobs that Plaintiff could perform, given the limitations set forth by the ALJ: light press machine operator, hand packer, copy machine operator, grinding machine operator.[5/] (R. 636-38.)  Plaintiff points out that these four unskilled jobs require constant or frequent reaching and handling.  The vocational expert testified in response to the ALJ hypothetical question that assumed Plaintiff to be credible, that Plaintiff's diminished hand strength and grip would preclude any jobs at step

---

[5/]  The vocational expert gave four numbers for these jobs, which correlate with the following listings in the Dictionary of Occupational Titles (DOT): Roll-Over Press Operator (DOT #690.685-326); Packing-Machine Can Feeder, (DOT #920.686-030); Assembler (#734.687-018); Grinding-Machine Operator, Automatic (DOT #690.685-194).  U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991).

five requiring reaching, handling and fingering. (R. 528.)  In response to Plaintiff's attorney's questions, the vocational expert agreed that the jobs she named would require "good use of the hands," and the "sedentary [jobs] especially would require frequent and continuous use of the hands."  (R. 540.)

Finally, Plaintiff points out that the ALJ failed to consider the potential side effects of the narcotic pain medications prescribed for Plaintiff.  Oxycontin and Lortab, in particular, are recognized to have side effects of dizziness, confusion, sedation, and drowsiness. *Physicians' Desk Reference*, 2706, 1131 (61st ed. 2007).  Dr. Elfrink noted in October, 2005, that Plaintiff was aware of the "possible sedation" and "danger to self and others if operating machinery or in situations requiring full cognitive function" due to the use of these medications. (R. 460.)  Social Security Ruling 96-8p requires that the ALJ consider the effects of treatment in his RFC assessment, including the side effects of medication.  1996 WL 374184 at *5.  The ALJ's hypothetical question to the vocational expert asked her to assume that Plaintiff's medications do not preclude him from functioning at the light exertional level and that Plaintiff would remain reasonably alert to perform required functions presented by his work setting.  (R. 536.)  Yet, there is no indication in the ALJ's decision that he considered the side effects of the pain medication taken by Plaintiff.  The Commissioner set forth evidence purporting to show that Plaintiff did not "actually" experience any possible side effects, and argued that, consequently, the ALJ did not need to consider this aspect of Plaintiff's case.  The Court views this as a 'post-hoc" rationalization which the Court cannot adopt as it is "not apparent from the ALJ's decision itself."  See *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007).

The Court concludes that the ALJ failed to properly assess Plaintiff's residual functional capacity by failing to take into account Dr. Elfrink's opinion and by failing to consider Plaintiff's impairments in combination.[6]

**C.    Credibility**

Further, the Court finds that the ALJ failed to properly assess Plaintiff's credibility. The ALJ found that Plaintiff's subjective "complaints are inconsistent with the medical evidence of record and they appear to be exaggerated." (R. 23.)  Plaintiff's testimony that he could lift only five pounds, the ALJ reasoned, was inconsistent with Dr. Nebergall's 20-pound lifting restriction for Plaintiff.  In addition, the ALJ pointed out that none of Plaintiff's physician's reported that Plaintiff was unable to work. (*Id.*)

As discussed above, Dr. Nebergall's 20-pound lifting restriction is unexplained, conclusory and lacks support in the medical record.  It is also contradicted by subsequent treatment records from Plaintiff's primary care physician, Dr. Elfrink.  In addition, the ALJ cannot rely solely on the absence of a physician's opinion stating that Plaintiff is unable to work, given the Tenth's Circuit's admonition that "[t]he absence of evidence is not evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993).  An opinion that a claimant is unable to work is also an issue reserved to the Commissioner.  Social Security Ruling 96-5p states that such an opinion by a treating physician is "never entitled to controlling weight or special significance."  1996 WL 374183 at *2.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Hackett v.*

---

[6]    The Court need not address Plaintiff's argument that the ALJ erred in finding Plaintiff could perform other work, as it is subsumed in his argument that the ALJ failed to properly assess Plaintiff's RFC.

*Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (quotation omitted). "However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (alteration and quotation omitted). The ALJ's credibility finding in this instance is not closely and affirmatively linked to substantial evidence.

## 5.  CONCLUSION

The Court finds that the Appeals Council failed to properly consider evidence that was new, material, and relevant to the period on or before the date of the ALJ's decision. Further, the ALJ failed to properly assess Plaintiff's RFC and credibility. Thus, the Commissioner used the wrong legal standards or failed to clearly demonstrate reliance on the correct legal standards in evaluating Plaintiff's application. Accordingly, the Court **reverses and remands** the Commissioner's decision for further proceedings consistent with this opinion and order.

It is so ordered this 13th day of November, 2007.

Sam A. Joyner
United States Magistrate Judge